UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VICKY LYNN S.,[1]

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:20-cv-00974 (JJM)

      This is an action brought pursuant to 42 U.S.C. §405(g) and 42 U.S.C.

§1383(c)(3) to review the final determination of the Commissioner of Social Security that

plaintiff was not entitled to Social Security Disability ("SSD") or Supplemental Security Income

("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings

[11, 12].[2]   The parties have consented to my jurisdiction [13].  Having reviewed their

submissions [11, 12, 14], plaintiff's motion is granted.

**BACKGROUND**

      The parties' familiarity with the 814-page administrative record [10] is presumed.

Further, the parties have comprehensively set forth in their papers plaintiff's treatment history

and the relevant medical evidence. Accordingly, I refer only to those facts necessary to explain

my decision.

_____

[1]      In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

After plaintiff's claim was initially denied ([10] at 11), an administrative hearing was held on April 12, 2019 before Administrative Law Judge ("ALJ") Paul Georger.  *See* id. at 31-58 (transcript of hearing).  On July 5, 2019, ALJ Georger issued a decision finding that plaintiff was not disabled.  Id. at 11-20. Following an unsuccessful request for review with the Appeals Council (id. at 1-7), plaintiff initiated this action.

**A.  ALJ Georger's RFC Determination**

ALJ Georger found that plaintiff's severe impairments were "unspecified depressive disorder, unspecified anxiety disorder, and migraine headaches".[3]  Id. at 17.  He also determined that plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations:

> "[T]he claimant can perform work with simple, routine, repetitive tasks; work with simple work related decisions; and work with occasional interaction with supervisors, coworkers, and the general public."

Id. at 15.

To support his RFC findings, ALJ Georger considered opinions concerning plaintiff's functional limitations from three sources: 1) consultative examiner Ashley Dolan, Psy.D.; 2) state agency psychological consultant T.[4] Bruni, Ph.D.; and 3) plaintiff's treating psychiatric nurse practitioner, David Pfalzer.  Id. at 17-18.

ALJ Georger assigned "substantial weight" to Dr. Dolan's June 5, 2017 opinion. Id. at 22. Dr. Dolan opined, *inter alia*, that plaintiff had "moderate limitations" in interacting

---

[3]     ALJ Georger also considered, but rejected for purposes of this step of the sequential evaluation, evidence of low back pain and mild obstructive sleep apnea.  Administrative Record [10] at 13-14. Plaintiff does not challenge ALJ Georger's findings concerning his severe impairments.

[4]     Dr. Bruni's first name does not appear in the record.

adequately with supervisors, coworkers, and the public; sustaining concentration and performing

a task at a consistent pace; and regulating emotions, controlling behavior, and maintaining well-

being.  Id. at 565.  She found that plaintiff was "able to sustain an ordinary routine and regular

attendance".  Id.  ALJ Georger explained:

> "Dr. Dolan's opinion is consistent with the medical evidence of
> record showing improved symptoms with counseling and
> medication management.  Dr. Dolan's opinion is well supported by
> a comprehensive mental examination and well explained in
> narrative detail.  Her opinion is consistent with the opinion of Dr.
> Bruni."

Id. at 17.

Dr. Bruni issued a June 9, 2017 opinion of plaintiff's functional limitations based

upon a review of the records available in plaintiff's file, including Dr. Dolan's report.  Id. at 175-

76, 179-81.  He found that plaintiff:

> "has moderately severe psychiatric impairment.  Her ability to deal
> with co-workers and the public would be somewhat reduced, but
> adequate to handle brief and superficial contact.  Similarly, her
> ability to respond appropriately to supervision would be reduced
> but adequate to handle ordinary levels of supervision in the
> customary work setting."

Id. at 176.  ALJ Georger assigned "substantial weight" to Dr. Bruni's opinion.  He found it:

> "consistent with the medical evidence of record including the
> claimant's positive response to mental health treatment, her
> conservative course of care, and her generally benign mental status
> examinations . . . . Dr. Bruni's opinion is consistent with the
> opinion of Dr. Dolan . . . . His opinion is well supported by a
> longitudinal review of the medical record and well explained in
> narrative detail."

Id. at 18.

NP Pfalzer completed a Mental Impairment Questionnaire on January 3, 2019,

based upon approximately five years of treatment.  He opined that plaintiff had moderate

limitations in three areas of mental functioning:  understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. He found plaintiff was mildly limited in interacting with others.  He also stated that plaintiff would be absent from work three days per month due to plaintiff's impairments or treatment.  In addition, he found that plaintiff's RFC to perform a number of mental skills necessary to do unskilled work was limited:

**11.    Residual Functional Capacity:**

| I. | MENTAL ABILITIES AND APTITUDES NEEDED TO DO UNSKILLED WORK | Never/ Unable | Occasional (up to 1/3) | Frequent (1/3 to 2/3) | Constant/ Unlimited |
|---|---|---|---|---|---|
| A. | Remember work-like procedures | | | X | |
| B. | Understand and remember very short and simple instructions | | X | | |
| C. | Carry out very short and simple instructions | | X | | |
| D. | Maintain attention for two hour segment | | | X | |
| E. | Maintain regular attendance and be punctual within customary, usually strict tolerances | | | X | |
| F. | Sustain an ordinary routine without special supervision | | | X | |
| G. | Work in coordination with or proximity to others without being unduly distracted | | | X | |
| H. | Make simple work-related decisions | | X | | |
| I. | Complete a normal workday and workweek without interruptions from psychologically based symptoms | | X | | |
| J. | Perform at a consistent pace without an unreasonable number and length of rest periods | | X | | |
| K. | Ask simple questions or request assistance | | X | | |
| L. | Accept instructions and respond appropriately to criticism from supervisors | | | X | |
| M. | Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes | | X | | |
| N. | Respond appropriately to changes in a routine work setting | | | X | |
| O. | Deal with normal work stress | | | X | |
| P. | Be aware of normal hazards and take appropriate precautions | | X | | |
| Q. | Set realistic goals or make plans independently of others | | X | | |
| R. | Interact appropriately with the general public | | | X | |
| S. | Maintain socially appropriate behavior | | X | | |
| T. | Adhere to basic standards of neatness and cleanliness | | X | | |
| U. | Travel in unfamiliar place | | X | | |
| V. | Use public transportation | | X | | |

ALJ Georger gave "reduced weight" to NP Pfalzer's opinion, explaining:

> "[NP] Pfalzer generally opines that the claimant has no more than a moderate limitation in any of the four [broad] areas of mental functioning. This finding is generally consistent with the medical evidence of record showing well controlled symptoms with treatment. . . . However, [NP] Pfalzer opines that the claimant's conditions will cause three days of absence per month. . . . [NP] Pfalzer provides no significant explanation for this finding[] and it is inconsistent with the frequency and intensity of the claimant's symptoms as reported in his own medical files."

Id. at 18. ALJ Georger gave no further explanation or examples of the inconsistencies to which he refers. Nor did he acknowledge any of the specific limitations that NP Pfalzer opined in the RFC section of the report.

The vocational expert testified that an individual would be precluded from competitive employment if she were off-task more than 15% of the workday. Id. at 57. In addition, absences of "[t]wo days a month on an ongoing basis would not be tolerated". Id. at 56.

Based upon the RFC and the vocational expert's testimony, ALJ Georger determined that there were a significant number of jobs available in the national economy that plaintiff could perform. Id. at 19-20. He therefore concluded that plaintiff was not disabled as defined in the Social Security Act. Id. at 20.

## ANALYSIS

### A.  Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". <u>Consolidated Edison Co. of New York. Inc. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.  <u>Shaw</u>, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  <i>See</i> <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that that ALJ Georger erred when he failed to explain why he rejected the functional limitations opined in NP Pfalzer's assessment.  Plaintiff's Memorandum of Law [11-1] at 16-20.  I agree with plaintiff that remand is required for a proper RFC analysis, and for further development of the record, if necessary. It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". <u>Matta v. Astrue</u>, 508 Fed. Appx. 53, 56 (2d Cir 2013) (Summary Order).  However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, he or she must explain why the opinion was not adopted.  <i>See</i> <u>Dioguardi v. Commissioner of Social Security</u>, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006) ("[u]nder the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.' Soc. Sec. Ruing 96-8p (1996)").

Social Security Ruling ("SSR") 06-03P[5] states that the same factors used to consider opinions from "acceptable medical sources", like physicians and psychologists, will be used to examine evidence from medical sources who are not "acceptable medical sources", such

---

[5]      SSR 06-03P was rescinded for claims filed on or after March 27, 2017.  <i>See</i> 82 F.R. 15263-01, 2017 WL 1105348 (F.R.) (March 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017").  Plaintiff filed her claim for SSD on February 28, 2017 and her claim for SSI on March 2, 2017.  [10] at 11.

as nurse practitioners and licensed clinical social workers. SSR 06-03P, 2006 WL 2329939 (2006) at *2, *4.

   "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c), which applies to claims for Social Security Disability benefits and contains provisions identical to those in 20 CFR §416.927(c), applicable here in the context of this claim for SSI).[6]

   Moreover, where an RFC assessment conflicts with a functional opinion from a treating source, "[p]laintiff [is] entitled to an express recognition from the Commissioner of the existence of [the] favorable medical source statement and, if the ALJ declined to accept it, the reasons for not doing so." Dioguardi, 445 F.Supp.2d at 296-97 (W.D.N.Y. 2006).  ALJ Georger assigned "reduced weight" to NP Pfalzer's opinion, but gave reasons for rejecting only the opinion that plaintiff would be absent from work three days per month.  Administrative Record [10] at 18.  ALJ Georger did not give any reason for rejecting the functional assessments included in the "Residual Functional Capacity" section of the form, nor did he even acknowledge the existence of these assessments.

---

[6]  "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed before that date.

The Commissioner likewise ignores this portion of NP Pfalzer's opinion, except to assert that there is an inconsistency between NP Pfalzer's opinion concerning monthly absences and his opinion that plaintiff would frequently (*i.e.* between 1/3 to 2/3 of the time) be able to maintain regular attendance and be punctual within customary tolerances.[7]  *See* Commissioner's Brief [12-1] at 16.  However, ALJ Georger did not cite this as a reason for rejecting NP Pfalzer's opinion.  *See* Administrative Record [10] at 18.  The Commissioner's *post-hoc* explanation cannot re-write or fill gaps in an ALJ's opinion.  *See* Snell v. Apfel, 177 F.3d 128, 134 (2d Cir 1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action").

Remand is required because ALJ Georger did not acknowledge, let alone discuss, the functional assessments provided by plaintiff's treating mental health providers as required by SSR 06-03P and Burgess, supra.  "As a general matter, the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, and there is no absolute bar to crediting only portions of medical source opinions."  Raymer v. Colvin, 2015 WL 5032669, *5 (W.D.N.Y. 2015).  "However, where the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."  Felicia A. v. Commissioner of Social Security, 2021 WL 2153878, *2 (W.D.N.Y. 2021); *see also*  Beckers v. Colvin, 38 F.Supp.3d 362, 371 (W.D.N.Y. 2014) ("although a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to some extra consideration, when the nurse practitioner has a treating relationship with the patient" (internal quotations omitted)).  This failure is particularly egregious in the context of mental health impairments, such as depressive disorder and anxiety disorder:

---

[7]      These two items are not necessarily inconsistent.  An individual able to maintain regular attendance only 2/3 of the time would be absent from work approximately 7 times per month.

> "The ALJ made no attempt to 'reconcile' or 'grapple with' the apparent longitudinal inconsistencies in Estrella's mental health – one of the motivations behind *Burgess's* procedural requirement of explicit consideration of the frequency, length, nature, and extent of a physician's treatment. . . . This failure is especially relevant here because the first *Burgess* factor, and therefore evidence supporting its satisfaction, is of heightened importance in the context of Estrella's claimed impairment: depression.  Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."

Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (internal quotations, alterations, and citations omitted).

Moreover, I find it troubling that ALJ Georger supported his allocation of "substantial weight" to the opinions of Drs. Dolan and Bruni by noting, among other things, their consistency with one another.  *See* Administrative Record [10] at 17-18 ("Dr. Dolan's opinion . . . is consistent with the opinion of Dr. Bruni . . . Dr. Bruni's opinion is consistent with the opinion of Dr. Dolan").  Dr. Bruni, however, relied upon the opinion and findings of Dr. Dolan in order to form his opinion.  Such circular reasoning is not substantial evidence:

> "In evaluating Dr. Duffy's opinion, the ALJ assigned great weight because 'his opinion is in accordance with the substantial medical evidence of record and with the State agency's conclusions.' . . . Notably, the State agency's conclusions were formulated based on consideration of Dr. Duffy's opinion. . . . This circular reasoning does not explain to an examiner of the record why Dr. Duffy's opinion was assigned greater weight than that of Plaintiff's treating sources."

Beckers, 38 F.Supp.3d at 373 (internal alterations omitted).

Finally, it may be that additional restrictions in the RFC that target the functional limitations opined by NP Pfalzer would not preclude competitive work when combined with

other limitations.  However, as there is no analysis of these limitations, and no testimony from the vocational expert concerning additional limitations, the opposite could also be true.  Given the vocational expert's testimony concerning off-task time, the ALJ's analysis of this issue could be critical to the outcome of this claim.  *See* Cosnyka v. Colvin, 576 Fed. Appx. 43, 46 (2d Cir. 2014) (Summary Order) ("[t]here is no evidence in the record to the effect that Cosnyka would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday").  Here, the vocational expert testified that employers would tolerate no more than 15% off-task time. Administrative Record [10] at 668.  NP Pfalzer opined that plaintiff could only occasionally (*i.e.* "up to 1/3" of the time) "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms".  Id. at 56-58.

Even if ALJ Georger ultimately discounts the opinion of NP Pfalzer for permissible reasons, plaintiff is "entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits." Dioguardi, 445 F.Supp.2d at 297.  Remand is necessary for the ALJ to properly consider and analyze NP Pfalzer's opinion in accordance with 20 C.F.R. §404.1520c, and, if necessary, to further develop the record concerning the limitations opined by NP Pfalzer and their effect on plaintiff's ability to function in a work setting.

Because remand is necessary, I do not reach plaintiff's remaining arguments.  *See* Stack v. Commissioner, 2020 WL 5494494, *6 (W.D.N.Y. 2020) ("[b]ecause the Court has determined that remand is warranted on this basis, it need not reach plaintiff's remaining arguments").

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order but is otherwise denied, and the Commissioner's motion for judgment on the pleadings [12] is also denied.

**SO ORDERED**.

Dated: January 14, 2022

/s/    Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge